GUSTAF A. BLOMBERG v. THOMAS MONTGOMERY and Another.[1]

June 29, 1897.

Nos. 10,602—(220).

Adverse Possession—Abandonment.

Appellant claims title to the land in question by adverse possession under color of title. After he had taken a conveyance from a stranger having no title, he entered into possession; but before the statute had run in his favor he commenced an action against the five tenants in common, who were the true owners. Three of these answered, and were adjudged to be the owners of three-fifths of the land; and thereupon he purchased their interest, took the title in the name of his wife, and the land was subsequently, during the remaining portion of the 15-year period, occupied by tenants procured by him. *Held*, the evidence tended to prove, and the trial court was justified in finding, that he abandoned the possession to his wife, procured the tenants for her, and paid the taxes and managed the premises for her and as her agent, and not in his own right, and that the statute ceased to run in his favor as against the other tenants in common holding the other two-fifths of the land.

Deed—Identity of Grantor—Middle Initial.

When a middle initial is added to a name or omitted from it in a conveyance, so as to raise a doubt that the maker of the deed is the owner of the land, a further description of the maker in the deed as the heir of a certain other person deceased, and a statement in the notary's certificate of acknowledgment that she is known to him to be the same person described in, and who executed, the deed, will remove such doubt, and establish prima facie the identity of the maker.

Appeal by defendant Thomas Montgomery from an order of the district court for Nicollet county, Webber, J., denying his motion for a new trial. Affirmed.

*G. S. Ives* and *Hale, Morgan & Montgomery*, for appellant.
*A. A. Stone* and *John Lind*, for respondent.

CANTY, J.

Plaintiff brought an action for the partition of the quarter section of land here in question, and in his complaint alleges that he is the owner of two-fifths of said land, that defendants are husband and

[1] Reported in 72 N. W. 56.

wife, that defendant Sarah A. Montgomery is the owner of the other three-fifths of the land, and that defendant Thomas Montgomery claims in his own right some interest in the land, which claim is unfounded. Defendant Thomas answered, and alleged that he is the owner in fee simple of the whole of the land. On the trial before the court without a jury, the court found that plaintiff is the owner of an undivided two-fifths of the land, and defendant Sarah of the other three-fifths of the same, and that defendant Thomas has in his own right no interest in the land. From an order denying a new trial, defendant Thomas appeals.

1. Appellant claims title by adverse possession. The United States government issued a patent for the land to "the heirs of Isabella Morrison, deceased," on June 1, 1861. In 1868 one Mayo and wife made a warranty deed of the land to appellant, which deed was duly recorded, but neither Mayo nor wife appear ever to have had any interest in or title to the land. The evidence tends to prove that, claiming under this deed, appellant had about ten acres of the land broken in 1880; that during the next year this ten acres was cultivated by his tenant, more land was broken, some of the grass cut, and in the same manner the amount under cultivation was increased each year until in 1884 about 40 acres were under cultivation. No buildings have been put on the land, no one has ever resided upon it, and it has never been fenced, or at most only partly fenced.

It may be conceded that, if the evidence was conclusive that plaintiff has ever since continued in the hostile and exclusive possession of the land under the color of title furnished him by the Mayo deed, he would now be the sole owner of the whole quarter section, as this action was not commenced for more than fifteen years after he took possession in 1880.

But the evidence is not conclusive that he has remained in possession. On the contrary, it tends to prove that in the year 1883, or shortly thereafter, he abandoned his possession to his wife, who had become the owner of three-fifths of the land as aforesaid, and that since that time she, and not he, has been in possession. There were five heirs of Isabella Morrison, and it is conceded that each of them took an undivided one-fifth of the land under the government patent.

In 1878 appellant commenced an action against these five heirs to determine his title to the land, and but three of the five answered. The three so answering were adjudged to be the owners of the undivided three-fifths of the land, and appellant was given no relief as against the other two heirs. Thereafter, in 1883, he purchased the interests of the three heirs who had so answered, and took conveyances from them to his wife, but paid the purchase price with his own money. He has paid the taxes ever since 1878, and made the contracts with the different tenants who have occupied the premises since 1880. But since 1882 the land has been assessed for taxation in the name of his wife, and the court was warranted in finding that he paid the taxes and managed the property for his wife. There was evidence tending to prove that off and on, since 1884, appellant had repeatedly stated that the land belonged to his wife; also, in January, 1895, in a letter written by him to plaintiff, he stated that five-sixths of the land belonged to his wife, and that the other one-sixth "can never be disturbed." Under this evidence the trial court was not bound to find that appellant has during all these years continued in possession, but, on the contrary, was warranted in finding that he abandoned the possession to his wife, and was acting merely as her agent in what he did in looking after the property.

2. Plaintiff claims to have succeeded to the rights of Peter Morrison and Catherine Conwell, two of the five heirs of Isabella Morrison. On the trial the parties stipulated that certain persons named were all the heirs of Isabella Morrison. No question is made but that Peter Morrison, one of these, has conveyed his rights to plaintiff. Catherine Conwell, another of these, had died, leaving seven heirs, whose names are included in the stipulation. Plaintiff claims to have obtained conveyances from all of these. One of these is Isabella A. Dern. The grantor in the deed is Isabella Dern. Another is Myrtie Thorp. The grantor in the deed is Myrtie B. Thorp. Another is George B. Conwell, Sr., and the name is so written in the body of the deed, but he signed it "G. B. Conwell, Sr."

It is contended by appellant that it is not presumed that these deeds were made by said heirs, and that there is no proof of the identity of the grantors, or that they are the heirs above mentioned; citing Ambs v. Chicago, 44 Minn. 266, 46 N. W. 321.

The deed signed by Isabella Dern and Myrtie B. Thorp recites that they are heirs of Catherine Conwell, deceased, who was an heir of Isabella Morrison, deceased; and in the certificate of acknowledgment the notary certifies that they are known to him to be the same persons described in, and who executed, the foregoing deed. This is prima facie evidence that they are the persons thus described. In the certificate of acknowledgment to the deed of George B. Conwell, Sr., it is also certified that he is known to the notary to be the same person described in, and who acknowledged, the deed. This sufficiently identifies him, also. See Rodes v. St. Anthony Co., 49 Minn. 370, 52 N. W. 27.

This disposes of the case, and the order appealed from is affirmed.

BUCK, J. (dissenting).

I dissent. It seems to me that the conclusion arrived at by the majority of the court is not warranted by the facts. It is not only unwarranted, but in direct conflict with the uncontradicted evidence. It is seldom that a case comes to this court for review where, in my opinion, the finding of the trial court is so lacking in the evidence necessary to uphold it as in the one at bar. If the contest was between Thomas Montgomery and Sarah A. Montgomery, then there would be some justification for applying the rules of law laid down by the court to the facts as they appeared to the trial court and in the majority opinion. But this is not a controversy between the Montgomerys as husband and wife, nor as individuals. In the majority opinion it is said that it may be conceded that, if the evidence was conclusive that plaintiff has ever since continued in hostile and exclusive possession of the land under color of title furnished him by the Mayo deed, he would now be the sole owner of the whole quarter section, as this action was not commenced for more than fifteen years after he took possession in 1880, but that the evidence is not conclusive that he has remained in possession, and that, on the contrary, it tends to prove that in the year 1883 he abandoned his possession to his wife, and since that time she, and not he, has been in possession. If that is not a correct statement of the facts, then the order of the trial court should be reversed and a new trial granted.

That Thomas Montgomery performed all of the acts necessary to

constitute adverse possession up to 1883 seems to be warranted by the facts and conceded by the court. Now, what did Sarah A. Montgomery do to justify the finding or statement that she was in possession of the premises after that date, or at any time whatever? She never built a fence or inclosed the premises in any manner at any time. She never caused a furrow to be plowed, nor raised any grain or crops thereon, nor caused the land to be pastured. No hay was cut by her direction, and she never made any improvements upon the premises. It does not appear that she ever entered upon the premises or saw them, and never paid any taxes on the land. She never assumed control over it, or claimed it or pretended to claim it, during all this time. She never rented it to a tenant, nor authorized any one to do so for her. Thomas Montgomery caused about 40 acres of the land to be plowed and cultivated and received rental himself. It was never paid or given to his wife. He paid for the breaking and what fencing was done, and paid the taxes for 20 or more years. The herding and cutting hay were done under his direction. He testifies to all these matters, and his evidence stands uncontradicted. It seems to me that such testimony and facts should not be ignored and disregarded. There is no witness who testifies to the contrary.

What are the facts supposed to avoid or militate against this uncontradicted evidence? One is that he procured a quitclaim deed to be made to his wife in 1883 from one Carter, conveying a tax-title interest, and another is that in the same year he procured a quitclaim deed to his wife of the premises from some of the heirs of the original owner to whatever interest they had in the land. But how could this affect his actual adverse possession of the land which he was then holding? This act was, on his part, one hostile to the interests or rights of the plaintiff's predecessors. His own money paid for these deeds, and he testifies that it was in aid of his own possession. This he had a right to do. And he had the legal right to purchase as many adverse rights or claims against the property as he chose, without abandoning his own adverse claim, no matter in whose name he purchased them, if it was done to aid his own claim or adverse possession, as he testifies. Buying up outstanding claims against the property did not invalidate his right of possession. If

he caused the deed to run to his wife, that was a matter between them, not that of the other owners of the paper title. He did not surrender the possession to his wife. He never deeded away his right to her, or put her in possession of the land. His own acts in and about the land and its management from the time he first took possession of it were hostile to the whole world, and there is not the slightest legitimate evidence to the contrary.

Some importance seems to be attached to the fact that, in answer to plaintiff's letter, Thomas Montgomery wrote a letter in which he stated that five-sixths of the title in fee absolute was in his wife, and that the other sixth could not be disturbed. But in the same letter he refers to the land as his own; that he had held it for 20 years for sale at $20 per acre. There is no question of estoppel in the case. Plaintiff wrote to Thomas Montgomery as the owner of the land, and when he purchased the two-fifths interest he did not rely upon any representations made by Thomas Montgomery. He bought of other parties, on speculation, for less than one-fifth its value. Now, how could this letter in any manner change Thomas Montgomery's actual adverse possession of the land, or deprive him of his rights therein, as against the plaintiff, unless he had surrendered such possession to his wife? There is absolutely no evidence that he ever did surrender such possession. The uncontradicted evidence is that he did not. It seems to me that it is an anomaly in the law to hold that the dealing of Montgomery and wife, or whatever he said in regard to her right in the land, can be tortured into an act which will destroy his adverse rights in the land, in favor of an entire stranger, who did not act upon any such dealings or statements.

There is no pretense that any person was in possession of the premises from 1868 to the time of the trial, unless it was Thomas Montgomery or his wife. Neither plaintiff nor his predecessors in interest were in possession, and for more than 20 years they never paid any taxes. Now, in spite of the uncontradicted evidence of the husband to the contrary, and without any such claim of the wife, she is made to appear as having been in possession since 1883. She did not employ a tenant herself, and there is no presumption that she authorized her husband to do so; for that would be contrary to law, if she was the owner of the land. Sanford v. Johnson, 24

Minn. 172. In this case cited it was held that a husband could not, as attorney or agent of his wife, make a valid lease of her real estate. See, also, Phillips v. Blaker, 68 Minn. 152. Dealings by him in regard to real estate or any interest therein are prohibited by G. S. 1894, § 5534.

If Sarah A. Montgomery obtained any estate or interest in the land under the two deeds referred to, she no longer had any right to make any contract with her husband relative to such land. That he took possession of the land originally for his own use and benefit is unquestioned, and that such possession was adverse to the whole world is not denied. Any right which he then had could not, either by an agreement with his wife, or by operation of law, through his assistance in procuring deeds to be made in her name, destroy his possession or right in the land. Much less could any statement that it was his wife's land have this effect. The only way that he could be deprived of such adverse possession would be by his own deed or release of such right, or by actually abandoning his possession and claim thereto, or by judgment of ouster. None of these things appear to have been done. On the contrary, all that he did was to strengthen his adverse claims, and the evidence of this is uncontradicted.

There is such manifest error in the majority opinion of the court that I have felt it my duty to express my own views somewhat at length, and I am of the opinion that the order of the trial court denying the motion for a new trial should be reversed.